OPINION OF THE COURT
Richter, J.
On the morning of November 6, 2008, Detective Raymond Mongelli was driving in a marked police car in the vicinity of Lenox Avenue in upper Manhattan. Mongelli, who was in uniform, noticed a black Lexus with heavily tinted windows, a violation of the Vehicle and Traffic Law. The Lexus turned west from Lenox Avenue onto 115th Street, and Mongelli activated the patrol car’s lights and siren and signaled the Lexus to pull over. The Lexus stopped partway down the block on the north side of the street, and Mongelli stopped his vehicle about 20 feet behind.
Detective Mongelli approached the Lexus and asked the driver, who was alone in the car, for his license and registration. The driver, who appeared nervous, told Mongelli that he did not have a license, but provided the detective with his name and date of birth. Mongelli returned to his patrol car, checked the driver’s information on his computer console, and learned that the driver had a revoked license. As he was checking the computer, Detective Mongelli looked up and saw defendant standing at the open window of the Lexus. The detective observed defendant take a small black plastic bag from the driver of the Lexus and walk away from the car toward the opposite sidewalk on the south side of the street. Mongelli did not hear any communication between the driver and defendant, and he could not see what was inside the bag.
Mongelli called for backup, got out of his police car, and told defendant to stop. Defendant did not respond and continued to walk away from the Lexus. After reaching the south sidewalk, defendant walked eastbound toward the direction of Detective Mongelli and the patrol car. Mongelli walked diagonally toward defendant, ordered him to stop several more times, and then told defendant to “turn the bag over.”
Meanwhile, two uniformed backup officers arrived on the scene in a marked patrol car with lights flashing and siren sounding. The backup officers got out of their vehicle and approached defendant from the east. Defendant, who could see the two backup officers coming toward him, stopped and threw the plastic bag onto the trunk of a nearby parked car. The bag opened as it landed, and inside, Detective Mongelli was able to see a clear ziplock bag that, based on his training, appeared to be marijuana. Defendant was then placed under arrest.
*4 Defense counsel did not timely move to suppress the physical evidence, the case proceeded to trial and defendant was convicted of criminal possession of marijuana in the third degree. In a previous appeal, we concluded that defendant was deprived of effective assistance of counsel due to counsel’s failure to file a suppression motion, or to provide good cause for such failure (96 AD3d 677 [2012]). We found that the actions of the police in stopping defendant and seizing the plastic bag were of questionable propriety, and raised a colorable basis for suppression. The appeal was held in abeyance and the matter was remitted for a suppression hearing. Defense counsel filed a motion to suppress, a hearing was held and the court denied the motion. We now reverse.
The Court of Appeals has identified a gradual four-level test for evaluating police-citizen street encounters (People v De Bour, 40 NY2d 210, 223 [1976]). The first level permits an officer to approach and request information based on an objective credible reason not necessarily indicating criminality (id.). Level two permits a greater intrusion and allows for a “common-law right to inquire,” which must be based on “a founded suspicion that criminal activity is afoot” (id.). The third level is a forcible stop and detention, and must be based on a “reasonable suspicion” that a person has committed, is committing or is about to commit a crime (id.). Finally, at the fourth level, an arrest may be made if a police officer has probable cause to believe that the person to be arrested has committed a crime, or an offense in the officer’s presence (id.).
Applying these standards, we find that the evidence should have been suppressed. After pulling the driver of the Lexus over for a traffic infraction, Detective Mongelli observed his nervous demeanor, and learned that his license had been revoked. The detective then saw defendant arrive at the Lexus, receive a black bag from the driver, and walk away. These observations provided, at most, a founded suspicion of criminal activity. Defendant’s sudden appearance at the Lexus gave the detective reason to believe that the driver, having been stopped by the police, had summoned defendant to dispose of an item that the driver did not want the police to find (see People v Nobles, 63 AD3d 528, 529 [1st Dept 2009], lv denied 13 NY3d 798 [2009] [founded suspicion of criminality present where police stopped a lively cab for a traffic violation and observed the defendant passenger nervously push a bag he had been carrying on his body away from himself]).
In response to this founded suspicion that criminal activity was afoot, Detective Mongelli was permitted to conduct a *5 common-law inquiry. But the police actions here went beyond a level two intrusion and constituted a level three stop and detention. Defendant was approached by Mongelli, who was in uniform, and loudly ordered to stop multiple times. Two other uniformed officers arrived in a police car with lights and siren engaged, and approached defendant from a different direction. Under these circumstances, we conclude that a seizure had occurred because “a reasonable person would have believed . . . that the [officers’] conduct was a significant limitation on his or her freedom” (People v Bora, 83 NY2d 531, 535 [1994]; see Matter of Brandon D., 95 AD3d 776 [1st Dept 2012] [appellant seized where it was apparent he was not free to leave]). Furthermore, the detective’s command to “turn the bag over” constituted at least a level three intrusion, requiring reasonable suspicion.
It is well established that a citizen has a right not to respond to law enforcement inquiries and to walk away from the police (Illinois v Wardlow, 528 US 119, 125 [2000] [“when an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business”]; People v May, 81 NY2d 725, 728 [1992]; People v Howard, 50 NY2d 583, 586 [1980], cert denied 449 US 1023 [1980]). In People v Moore (6 NY3d 496, 500 [2006]), the Court of Appeals reaffirmed this principle and described an individual’s “right to be let alone” as the distinguishing factor between the level of intrusion permissible under the common-law right to inquire and the right to make a forcible stop. The Court reasoned that
“[i]f merely walking away from the police were sufficient to raise the level of suspicion to reasonable suspicion . . . the common-law right of inquiry would be tantamount to the right to conduct a forcible stop and the suspect would be effectively seized whenever only a common-law right of inquiry was justified” (id. at 500).
The Court concluded that to elevate a level two inquiry to a level three stop, the police must obtain additional information or make additional observations of suspicious behavior sufficient to establish reasonable suspicion (id. at 500-501). Because no such additional information or observations existed here, the police lacked reasonable suspicion to justify the seizure that occurred.
The People unpersuasively argue that defendant’s walking away at a fast pace upon being approached by Detective Mongelli provided the requisite reasonable suspicion. Although a defendant’s flight can be considered in conjunction with other at *6 tendant circumstances in determining whether an officer had reasonable suspicion (People v Martinez, 80 NY2d 444, 448 [1992]), there is no reasonable view of the evidence here that defendant “actively fled” (People v Moore, 6 NY3d at 501). Defendant did not run away from the detective, increase his pace, or dart behind a car or into a building. Nor did defendant suddenly change his direction upon the sight of the police. In fact, defendant walked toward the direction of Detective Mongelli and his patrol car.
Thus, this case stands in contrast to those cases where flight was found because the defendant engaged in furtive or evasive conduct (see e.g. People v Emiliano, 81 AD3d 436 [1st Dept 2011], lv denied 17 NY3d 794 [2011] [running away from the police]; People v Austin, 100 AD3d 1010 [2d Dept 2012], lv denied 21 NY3d 1002 [2013] [ducking behind a building]; People v Flores, 88 AD3d 902 [2d Dept 2011], lv denied 18 NY3d 858 [2011] [changing direction and increasing pace]). In light of the Court of Appeals jurisprudence on this issue, we cannot hold that defendant’s walking at a hurried pace along the sidewalk, without more, was sufficient to constitute flight because that would impermissibly conflate a level two common-law inquiry with a level three forcible stop (see Moore at 500-501). Thus, the seizure that occurred here was not supported by reasonable suspicion, and the evidence should have been suppressed.
Contrary to the dissent’s view, People v Martinez (80 NY2d 444 [1992], supra) does not support a finding of reasonable suspicion here. In Martinez, the defendant was seen removing an item known to be used in concealing drugs. Moreover, the defendant in Martinez ran with the police in pursuit. Here, although we find that Detective Mongelli had a founded suspicion of criminality, he did not see an item that he explicitly associated with a drug transaction. Moreover, defendant here did not run from the police, but actually walked toward their direction. Thus, the police did not have reasonable suspicion or even come close to it. As the Court of Appeals noted in Moore, conduct that triggers level two of the De Four test only allows the police “to follow defendant while attempting to engage him — but not to seize him in order to do so” (6 NY3d at 500).
Although we find that the conduct here was sufficient to establish a founded suspicion of criminal activity, the dissent makes more of defendant’s receipt of the plastic bag than we think is warranted on this record. The conduct here may be unusual, but no one saw any indication that the bag, or even the car, contained contraband (see People v Robbins, 83 NY2d *7 928, 930 [1994] [no reasonable suspicion where the defendant grabbed at his waistband after exiting stopped livery cab and then fled]). Finally, to the extent that People v Oeller (191 AD2d 355 [1st Dept 1993], affd 82 NY2d 774 [1993]), cited by the dissent, suggests that defendant’s walking at a fast pace would be sufficient by itself to elevate the encounter to reasonable suspicion, we question its continued viability in light of the subsequent Court of Appeals ruling in Moore.
Accordingly, the judgment of the Supreme Court, New York County (Gregory Carro, J.), rendered December 1, 2009, convicting defendant, after a jury trial, of criminal possession of marijuana in the third degree, and sentencing him, as a second drug offender previously convicted of a violent felony, to a term of two years to be followed by two years’ postrelease supervision, should be reversed, on the law and the facts, the motion to suppress granted, and the indictment dismissed.